UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
JASON MOORE,

                            Plaintiff,

          -against-

VILLAGE OF FREEPORT,

                            Defendant.
--------------------------------------------------------x

Docket No: CV-19-6548

**VERIFIED COMPLAINT**

Plaintiff Demands a Trial by Jury

        Plaintiff, JASON MOORE, by his attorney, Raymond Negron, Esq., files this Complaint and alleges as follows:

## NATURE OF THE ACTION

1.    This is a citizen action brought against the VILLAGE OF FREEPORT, New York ("FREEPORT") pursuant to §s 309(b) and (d) of the Federal Clean Water Act ("CWA"), 33 U.S.C. §§1319(b) and (d), for the VILLAGE OF FREEPORT'S numerous illegal and continuing discharges of pollutants, including raw sewage, into waters of the United States from its municipal and private sewer system in violation of § 301(a) and 402(p)(3)(B) of the CWA, 33 U.S.C. §1311(a) and §1342(p)(3)(B). This action is also brought under §s 504(a) and 505 of the CWA, 33 U.S.C. §1364(a), to require the VILLAGE OF FREEPORT to take such actions as may be necessary to abate the imminent and substantial endangerment to the health of persons affected by the VILLAGE OF FREEPORT's sewer collection system resulting in discharges of raw and untreated effluent and sewage to waters, homes, yards, parks, playgrounds, aquifers and water bodies; seeking injunctive relief and civil penalties for the VILLAGE OF

1

FREEPORT'S failure to comply with the CWA in its discharge of pollutants from its municipal wastewater collection system and private property wastewater collection system and satellite systems within its jurisdiction without a National Pollutant Discharge Elimination System ("NPDES") permit authorizing such discharges in violation of § 301 of the CWA, 33 U.S.C. §1311; for VILLAGE OF FREEPORT'S failure to conform to the Nassau County Sewer Ordinance pursuant to its contract with Nassau County regarding the maintaining of discharges to the Nassau County System causing excessive flows, permitting a lack of public education, lack of maintenance of private and public sewer lines, lack of enforcement of ordinances and among others, contributing to excessive mercury levels, excessive fecal coliform levels and other exceedances; for failing to protect the citizens of the VILLAGE OF FREEPORT and citizens utilizing the waters of the Great South Bay, tributaries and waterways that are polluted and contaminated due the negligence and recklessness of VILLAGE OF FREEPORT; due to its failure to control, conform to contract rights, protect citizens and environment, oversee, manage and communicate with Nassau County regarding its contract for the operation of the VILLAGE OF FREEPORT sewer collection system;  permitting citizens of the VILLAGE OF FREEPORT to be in violation of the CWA for illicit discharges on private property due to a lack of public education, enforcement of sewer use ordinances, inconsistent and outdated sewer use laws, regulations and ordinances, and for failure to put residents on notice of aging sewer laterals, connections, spurs, breaks, cracks, the effects of chemicals on corrosive materials and generally assisting residents to inspect, repair and replace private property sewer laterals; taking steps to reduce and control excess infiltration into the VILLAGE OF FREEPORT's collection system causing

sanitary sewer overflows ("SSO'S")  resulting in contamination of water bodies and the

Great South Bay; for VILLAGE OF FREEPORT'S failure to undertake proper reporting,

research, enforcement, education and compliance with all aspects of the CWA; and

exposing residents and the VILLAGE OF FREEPORT to statutory fines in the amount of

$51,570 per day for each violation until January 14, 2017, and $52,414 per day for each

violation subsequent to January 14, 2017, pursuant to § 309 of the Clean Water Act, 33

U.S.C. 1319(d) and the Federal Civil Penalties Inflation Adjustment Act of 1990.

2.      The purpose of the CWA is to "restore and maintain the chemical, physical, and

biological integrity of the Nation's waters." 33 U.S.C. §1251 (a). To that end, the CWA

prohibits the unlawful "discharge of any pollutant by any person" into the waters of the

United States, the contiguous zone, or bays and sounds. 33 U.S.C. §1311(a), 402(a) of the

CWA, 33 U.S.C. §1342(a). The VILLAGE OF FREEPORT has failed to comply with the

CWA and as a result, there is ongoing contamination of the Great South Bay, and the

aquifers under Long Island that supply drinking water to the residents of Long Island.

The VILLAGE OF FREEPORT has failed to protect these important water bodies, and

has put its residents at risk for fines and penalties for leaking and outdated sewer pipes

that connect residences to the municipal sewer system, and for overloaded and outdated

wastewater treatment plants. By failing to educate the public about sewer pipes that are

beyond their lifespan and by failing to enforce sewer use ordinances, the resident

taxpayers of the VILLAGE OF FREEPORT now face millions of dollars of fines and

penalties, on their own, and as taxpayers of the VILLAGE OF FREEPORT due to the

long term neglect of sewer laterals and the collection system in the VILLAGE OF

FREEPORT.  The VILLAGE OF FREEPORT has put financial savings before clean

water and has promoted the contamination of water bodies and groundwater through unpermitted and uncontrolled leaking, broken, and corroded buried sewer lines that have been, and are presently, causing a deterioration of water quality, brown tide, sanitary sewer overflows, and numerous other dangerous and life threatening conditions. The VILLAGE OF FREEPORT has been on notice of these dangers for years and has chosen to ignore the dangers and catastrophic effects of neglected sewer lines and laterals and instead unnecessarily place financial burdens on taxpayers and residents who are unaware of the huge costs involved in fixing private property sewer laterals when they collapse, crack, leak and fall into disrepair due to their age, their condition due to groundwater, the corrosive effects of Hydrogen Sulfate within the pipes, and leaks due to improper spur connections. The VILLAGE OF FREEPORT has been aware for years that there is a lifespan for sewer collection pipes, including Orangeburg and Cast Iron, and, yet, the VILLAGE OF FREEPORT has failed to take any action to enforce its sewer use ordinance to require the maintenance of private property sewer laterals.

3.      This citizen complaint seeks an order and judgment protecting the residents of the VILLAGE OF FREEPORT from ongoing harm, ongoing violations and continued raw sewage contamination into the ground, the water and the environment. The VILLAGE OF FREEPORT has neglected to enforce its required duties under its contract with the County of Nassau, and that failure has led to neglect in the oversight, enforcement and maintenance of the VILLAGE OF FREEPORT sewer infrastructure under the control and responsibility of the VILLAGE OF FREEPORT.  That neglect has caused excess flow of sewage to the Nassau County Treatment Plants that has caused sanitary sewer overflows, beach closures, excess fees paid under the Nassau County contract with United Water,

4

and generally has contributed to contamination of water bodies. Sewer use fees paid to the County of Nassau by the residents of satellite collection systems in the VILLAGE OF FREEPORT, and other communities such as the Villages of Freeport, Lawrence and Garden City, will rise dramatically if the VILLAGE OF FREEPORT does not take steps to enforce its own sewer use ordinance, and the Nassau County Sewer Ordinance, and the Nassau County Public Health Regulations, as satellite collections systems and to take required steps to reduce flow to the Nassau County wastewater treatment facilities to reduce excess flow so that the VILLAGE OF FREEPORT is in compliance with DEC regulations requiring the VILLAGE OF FREEPORT to take reasonable steps to reduce infiltration into the COUNTY'S collection system that cause SSO's. Since the VILLAGE OF FREEPORT has turned its back on CWA violations and regulations, it is the role of a citizen complainant as a private attorney general to seek judicial intervention in an effort to protect the environment and to protect residents from CWA fines that accrue daily, to residents and to the VILLAGE OF FREEPORT.

4.      Nassau County maintains NPDES permit numbers NY0026450, NY0026859, and NY0026620 for the Bay Park, Cedar Creek and Glen Cove Wastewater Treatment Plants, respectively, pursuant to 33 U.S.C. § 1342(b). These permits allow the Nassau County to discharge limited and approved quantities of pollutants subject to compliance with certain requirements. They also require the submission of regular reports regarding the condition of the treatment plants and the characteristics of the discharges. The VILLAGE OF FREEPORT is a satellite collection system under the Nassau County NPDES and SPDES permits and is responsible to comply with the permit requirements.

5.      Due to the substandard conditions of the VILLAGE OF FREEPORT collection system, including on private property, the adjoining Great South Bay is polluted and unsafe, and the VILLAGE OF FREEPORT has been on notice of the violations and damaging discharges from the Nassau County treatment plants for years. The VILLAGE OF FREEPORT has failed to comply with DEC regulations requiring the reduction of infiltration into collection system laterals and pipes, has failed to educate the public regarding the aging condition of the sewer infrastructure in the VILLAGE OF FREEPORT and has failed to provide Clean Water Act public education regarding the causes of sanitary sewer overflows that cause contamination such as that occurring at the Nassau County wastewater treatment plants.  The continued violations of the COUNTY's wastewater permits for the treatment plans plant have increased the potential for dangerous medical and biological conditions for fish, animals and humans.

6.      The Nassau County Treatment Facilities have been in violation for years. Presently, Bay Park is in violation for Copper, Coliform and Chlorine level exceedances and Glen Cove is in violation for Fecal Coliform exceedances. The failure of the VILLAGE OF FREEPORT to maintain its collection system is a direct cause of these violations.

7.      The VILLAGE OF FREEPORT is strictly liable for NPDES and SPDES violations.  Under the Clean Water Act, "compliance is a matter of strict liability and a defendant's intention to comply or good faith attempt to do so does not excuse a violation." *Upjohn Co.,* 660 F. Supp at 1409 (citing *United States v. Earth Sciences, Inc.,* 599 F.2d 368, 374 (10th Cir. 1979); *Connecticut Fund for the Env't v. Job Plating Co.,* 623 F. Supp 207, 218 (D. Conn. 1985)).  Fecal coliform violations indicate the discharge

of incompletely disinfected effluent and suggests the presence of other pathogenic

bacteria and virus in the effluent. These discharges containing fecal coliform in excess of

permit limits increases the Plaintiff's risk of exposure to disease causing organisms.

Residents of Nassau County who drink water downstream of a sewage plant have

standing to challenge what goes into their water.

8.      The VILLAGE OF FREEPORT has been on notice of the poor and aging

condition of the private side of the VILLAGE OF FREEPORT collection system for

years. The most recent notice occurred on May 20, 2019 with the service of a Sixty Day

Notice of Citizen Complaint by JASON MOORE in the within action. This Sixty Day

Notice of Claim is annexed to this Complaint. Much earlier, though, the VILLAGE OF

FREEPORT was on notice of the condition of private property sewer laterals due to

available reports published by the EPA and other organizations that describe in detail the

declining condition of cast iron private property sewer laterals. In particular, the EPA

technical report dated May 1991 cautioned that government inaction regarding the

corrosive effects of Hydrogen Sulfate in private property and public wastewater pipes

would lead to catastrophic events such as sewer pipe collapse and street collapse.

(*Hydrogen Sulfide Corrosion: Its Consequences, Detection and Control*, EPA Office of

Water, September, 1991) This early study was correct; the most common failure of sewer

laterals is cracking on the top of the buried sewer pipe which permits rainwater to

infiltrate the collection system, causing excess flows and SSO's, and exfiltration of raw

sewage into the surrounding ground, causing long term contamination of the sole source

aquifer for Long Island drinking water. The VILLAGE OF FREEPORT must develop

and implement a sewer line corrosion plan as part of a public education program.

7

9.     The failure of the VILLAGE OF FREEPORT has caused sanitary sewer overflows to increase due to excess flow from sanitary sewer lines on private property and this data has been available to the VILLAGE OF FREEPORT by the DEC and EPA. Since the VILLAGE OF FREEPORT has neglected their legal obligation to reduce infiltration and educate the public, the rate of beach closures due to sanitary sewer overflows caused by infiltration during rain events has increased and still the VILLAGE OF FREEPORT continues to turn its back on the problem and deliberately fail to educate the public. Remedies for these corrosion problems have been available to the VILLAGE OF FREEPORT since 1977 when the EPA published a report entitled *Sewer Infiltration and Inflow Control Product and Equipment Guide* (EPA 600/2-77-017c), yet the VILLAGE OF FREEPORT has taken no action in over 40 years to address this problem which has resulted in cracked and broken buried pipes on private property in the VILLAGE OF FREEPORT and causes contamination and sanitary sewer overflows to occur regularly.

10.    Homes in the VILLAGE OF FREEPORT average over 50 years, and their connections to the VILLAGE OF FREEPORT sewer collection system are also aging. EPA and other government reports confirm that the lifespan of a cast iron sewer pipe is between 20 and 50 years. Thus, homes in the VILLAGE OF FREEPORT have sewer laterals that are well beyond their lifespan. This leads to breaks, leaks, cracks, and a general breakdown in the condition of the pipe. The VILLAGE OF FREEPORT has been on notice of the lifespan of private property sewer laterals yet has chosen to address the condition of the public sewer collection system rather than the private side. The private side of the collection system makes up one-half of the entire collection system, yet the

VILLAGE OF FREEPORT has failed to educate the public and provide a program to inspect and repair sewer laterals that will be within the means of residents of the VILLAGE OF FREEPORT. This failure has left residents unable to pay for expensive sewer lateral repairs and replacement and has thus left the private side of the collection system in an aging and deteriorated condition beyond its lifespan. The VILLAGE OF FREEPORT, by failing to enforce its own sewer use ordinance, and as a satellite collection systems required to enforce the Nassau County sewer use ordinance, t is leaving their residents in the dark. Government reports show that 70% of infiltration causing excess flows and SSO's are due to the private side sewer laterals, yet the VILLAGE OF FREEPORT has taken no steps to assist residents and to reduce infiltration.

11.     The VILLAGE OF FREEPORT has failed to maintain records of sewer lateral breaks, repairs, leaks, infiltration and exfiltration and has failed to educate the public, and these failures will cause VILLAGE OF FREEPORT residents to bear the burden of expensive repairs, basement and property floods, and Clean Water Act fines that will bankrupt the VILLAGE OF FREEPORT and its residents.

12.     The VILLAGE OF FREEPORT has never updated its sewer use ordinance, and to take steps to enforce that ordinance. The ordinance must include public education. A lack of public education causes confusion for homeowners when their laterals fail.

13.     The VILLAGE OF FREEPORT has never taken any steps to examine the spur connection from the private property lateral to the main line. Spur connections are commonly broken, aging and cracked and are a significant cause of infiltration, exfiltration and contamination. Historically, spur connections were made by hammering

the private sewer lateral into the main sewer line, and thus the seal at the main is broken, cracked and leaking raw sewage. The VILLAGE OF FREEPORT must undertake a complete assessment of the condition of the spurs and take steps required by DEC regulations to make repairs. These spurs are made of Orangeburg pipe and clay pipe, and they are crumbling and broken. This is a direct cause of the exfiltration of raw, untreated sewage into groundwater and into the soil around these pipes, and permits the infiltration of rainwater and groundwater into the pipes that causes excess flows in the collection system and then into the County collection system.

14.     The VILLAGE OF FREEPORT and the County of Nassau puts residents on notice of beach closures due to sanitary sewer overflows, but fails to educate the public as to the cause of those overflows. Residents are unaware as to the reason for beach closures beyond high bacteria levels, and the VILLAGE OF FREEPORT has failed to educate the public that those high bacteria levels are caused by treatment plant overflows caused by excess flow to the treatment plants caused by infiltration into sewer laterals. The VILLAGE OF FREEPORT must educate the public and not turn their back on the actual cause of SSO's.

15.     The VILLAGE OF FREEPORT has been able to avoid numerous EPA and DEC legal actions and resulting consent decrees and thus the VILLAGE OF FREEPORT has been able to continue its neglect and leaving the responsibility for subsequent elected governments. However, when the EPA and the DEC initiate an action against the VILLAGE OF FREEPORT, that action will cost the VILLAGE OF FREEPORT amounts of money beyond their ability to afford and the fines imposed will bankrupt the VILLAGE OF FREEPORT and their resident taxpayers. Consent decrees state that the

essential problem in municipalities facing consent decrees is too much water flowing to wastewater treatment plants in wet weather, a problem that occurs with every rain event in the VILLAGE OF FREEPORT.

16.     EPA and DEC consent decrees requiring public education, POTW flow reduction, and private sewer lateral programs to assist residents, reduce the amount of SSO's by increasingly large amounts. As an example, after a 5-year program in the City of Long Beach, New York, the City reported a 20% reduction in flow to the City's wastewater treatment facility.  Reductions in flow to wastewater treatment facilities save municipalities funds for operation and maintenance for the facility and the collection system, prevent sanitary sewer overflows, reduce sewer use fees, prevent contamination, and avoid EPA and DEC fees and consent decrees that cost millions of dollars in taxpayers funds.

17.     The EPA issued a report on the importance of maintaining private property sewer laterals in a June 2014 report that emphasized the importance that private property sewer laterals have on municipal sewer collection systems. (EPA, Private Sewer Laterals, June, 2014) That report stated that the condition of sewer laterals can affect the results of sewer system rehabilitation programs, particularly those programs investigating and addressing capacity and inflow and infiltration issues. The report stated that "typically, private laterals make up about half of the total length of a sewer system. Even when the system-wide impact of infiltration is not an issue, defective laterals can cause sewer backups, and can be an important issue of concern in public works agencies. The owners of the laterals may be unaware of these problems or unwilling to fix them if the consequences do not directly affect them." This is the problem that the VILLAGE OF FREEPORT hides from,

knowing that private property laterals in the VILLAGE OF FREEPORT are old, outdated, beyond their lifespan and commonly broken cracked and damaged, yet being reluctant to educate their residents because, as the EPA Report states, "Frequently it is because the buried sewer laterals that are presenting a problem to the municipality are not causing an obvious problem to the owners of the laterals. This makes dealing with private property owners over sewer lateral repairs a difficult issue. Most private property owners have no idea of the condition of their sewer laterals and they will see little or no direct personal benefit from the cost to repair their lateral." This is the problem caused by the VILLAGE OF FREEPORT's neglect; knowing that the problem exists but taking no action to remedy the problem although DEC regulations require action. This action seeks penalties, fines and orders against the VILLAGE OF FREEPORT to require immediate action, specifically to assist unknowing property owners to understand the issue of leaking, cracked and broken buried sewer laterals and to take action to assist property owners in inspecting, repairing and replacing sewer laterals with public education and repair programs that will ultimately reduce excess infiltration in the VILLAGE OF FREEPORT sewer collection system eliminating sanitary sewer overflows, beach closures, contamination and environmental damage.

## JURISDICTION, VENUE, NOTICE, AND AUTHORITY

18.     This Court has jurisdiction over the subject matter of this action pursuant to § 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331, 1345 and 1355.

19.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) and § 309(b) of the CWA, 33 U.S.C. § 1319(b), because it is the judicial district

where the VILLAGE OF FREEPORT is located and where the alleged violations occurred.

20.     Notice of the commencement of this action has been given to the VILLAGE OF FREEPORT in accordance with § 309(b) of the CWA, 33 U.S.C. § 1319(b), by the filing of a 60-Day Notice served on VILLAGE OF FREEPORT on the 20th day of May 2019. The VILLAGE OF FREEPORT failed to resolve this action during the 60-day period to enter a settlement of this matter to avoid litigation and thus all conditions precedent to the commencement of this action have been satisfied.

21.     Authority to bring this action is vested and authorized in §s 505 and 506 of the CWA, 33 U.S.C. §§ 1365 and 1366 and 28 U.S.C. §§ 516 and 519:

> Plaintiff has standing to bring this case. For purposes of standing under 33 U.S.C. § 1365(g), a citizen is a "person or persons having an interest which is or may be adversely affected." Defendants' chronic NPDES permit violations cause pollution that is harmful to the Plaintiff. This harm satisfies the injury-in-fact requirement defined by *Sierra Club v. Morton*, 405 U.S. 727 (1972).

## FACT STATEMENT

22.     This action is brought by citizen complainant JASON MOORE to require the Defendant VILLAGE OF FREEPORT to take all measures possible to fulfill the objectives of the CWA and to achieve and maintain compliance with the National Pollutant Discharge Elimination System (NPDES), the requirements of the CWA and all applicable Federal, State and local regulations. In order to cause the Defendant VILLAGE OF FREEPORT to comply with the CWA, Plaintiff JASON MOORE seeks the imposition of civil penalties against VILLAGE OF FREEPORT and additional penalties if the VILLAGE OF FREEPORT does not reach compliance. Since the VILLAGE OF FREEPORT has failed to educate the public and take steps to reduce

infiltration, all continuing to date, the Plaintiff seeks statutory penalties to be imposed against the VILLAGE OF FREEPORT. It is respectfully requested that the Court issue fines and penalties pursuant to the CWA against the VILLAGE OF FREEPORT. The total amount of fines to be imposed against the VILLAGE OF FREEPORT, from the notice date of September 22, 2015 to present, are in the amount of $51,570 per day for each violation until January 14, 2017, and $52,414 per day for each violation subsequent to January 14, 2017, pursuant to § 309 of the Clean Water Act, 33 U.S.C. 1319(d) and the Federal Civil Penalties Inflation Adjustment Act of 1990, for a total fine of Fifty Seven Million, Seven Hundred Seventy Four Thousand ($57,774,420.00) Dollars. For the residents of the VILLAGE OF FREEPORT who have failed to maintain their private property sewer lines that are connected to the VILLAGE OF FREEPORT sewer system, Plaintiff seeks statutory fines in the amount of $35,000 per day together with the increased fines by statute, for each day the individual resident failed to inspect, repair and replace outdated sewer lines and has been in violation of the sewer use ordinance of the VILLAGE OF FREEPORT. Since the VILLAGE OF FREEPORT has failed to educate the public regarding all aspects of private property sewer lines, including exfiltration, infiltration and intrusion, the importance of inspecting those lines, fixing those pipes, and repairing those pipes, as well as the lifespan of private sewer lines of 20 to 50 years, the Plaintiff seeks the imposition of a public education program as well as the imposition of fines. The Plaintiff seeks to cause the VILLAGE OF FREEPORT to comply with the intention of Congress over Forty (40) years ago, in 1972, to require municipalities and authorities to ensure that sewer systems are properly built, maintained and regulated so that contamination of water bodies and groundwater would not occur. The intention of

the CWA was to completely eliminate the discharge of pollutants into navigable waters by 1985. This intention was to be implemented by: management plans to assure control of pollution sources; research efforts to develop technology necessary to eliminate pollutant discharges; and the control of point source and non-point source discharges of pollutants. The initial deadline for governments to upgrade and regulate sewer systems without contamination and spills was 1985.  However, many municipalities and authorities missed the deadline, by failing to examine and regulate their sewer systems; by failing to report spills and leaks from sewer systems into navigable waters, aquifers, and groundwater; by failing to enforce laws, rules, and regulations enacted to penalize polluters; by failing to educate the public about sewer system upgrades, leaks, and maintenance to prevent contamination; by failing to evaluate, upgrade, enhance, maintain, regulate, and properly utilize sewer systems to avoid SSO's; by failing to eliminate infiltration of private and public sewer laterals; and by failing to monitor and remedy public and private sewer lines that were and are corroded and leaking. These failures have caused leaks, intrusion and overflows of sewer systems, which, in turn, have caused, and continue to cause, contamination of waterways, bays, beaches, streams, streets, basements and groundwater, including aquifers.

23.     There are a number of ordinances, regulations, statutes and laws that govern the requirements of a collection system that are being violated every day by the VILLAGE OF FREEPORT. Most importantly, though, a lack of public education leaves residents in violation of those laws as well although they may not be aware of their own requirements.

24.     This lawsuit is necessary due to the VILLAGE OF FREEPORT'S failures in implementing and complying with the CWA and because of a lack of record keeping and reporting by the VILLAGE OF FREEPORT. Insufficient record keeping, compliance failures and maintenance has put not only the citizens of the VILLAGE OF FREEPORT in violation of the CWA, but has exposed all citizen users of waters surrounding and adjacent to the VILLAGE OF FREEPORT to high Mercury levels, as well as illicit discharges to groundwater and aquifers, as the result of broken, cracked and leaking sewer lines and laterals as part of the VILLAGE OF FREEPORT sewer collection system. Mercury is a neurotoxin that can have serious detrimental health issues to humans and animals., Fish are exposed to high Mercury levels in the Long Island Sound. Exposure to human beings most commonly occurs when people eat fish and shellfish that have high levels of mercury in their tissues. ,In high doses, some forms of mercury have caused increases in several types of tumors in rats and mice. (EPA, *Health Effects of Exposure to Mercury*, updated January 15, 2016)

25.     There are no current or future plans to correct these deficiencies by the VILLAGE OF FREEPORT and thus citizen complainant JASON MOORE seeks court intervention to enforce applicable laws, rules, regulations and statutes. Court intervention is urgent due to the complete lack of the VILLAGE OF FREEPORT to comply with the Clean Water Act, the EPA and DEC regulations and laws, the laws of the State of New York and the Nassau County Sewer Use Ordinance.

26.     The VILLAGE OF FREEPORT failed to oversee, monitor or seek compliance with its contract with satellite collection systems for its municipal sewage treatment facilities. While under contract with United Water for the operation of the Nassau County

wastewater treatment facilities, the County of Nassau has a non-delegable duty and obligation to ensure and enforce compliance with the CWA both at the wastewater treatment facilities and in the entire county sewer collection system.  However, the County of Nassau has never enforced its contract rights with satellite systems to protect its citizens from contract breaches for illegal discharges causing high Carbonaceous Oxygen Demands ("COD") levels, high Mercury levels and high-suspended solids levels and thus the County is in violation as well. Yet a collection system is still obligated to comply with the contract with Nassau County and that has never occurred.

## RELEVANT FACTUAL HISTORY

**27.**     Sewers came to the VILLAGE OF FREEPORT in the first half of the twentieth century.  The first mention for a planned village-wide sewer system occurred in 1912. The VILLAGE OF FREEPORT sewer system includes over 85 miles of sewer line made of vitrified clay, wood and cast iron.

28.     In 1951 FREEPORT began to connect its sewerage disposal system with that of Nassau County and retained control over the VILLAGE OF FREEPORT collection system. Pursuant to an inter-municipal agreement with Nassau County, Nassau County is responsible to treat the sewage collected in the VILLAGE OF FREEPORT and the VILLAGE OF FREEPORT is responsible to maintain the 103 mile sewer collection system in good working order pursuant to the VILLAGE OF FREEPORT Sewer Use Ordinance, the Nassau County Public Health Law, the Nassau County Sewer Ordinance, the New York State Department of Environmental Conservation Regulations, he SPDES

and NPDES permits issued to the County of Nassau, and all other rules and regulations referred to and contained in those regulations including the CWA.

29.     The Nassau County Sewer and Storm Water Authority is responsible for the operation of Nassau County's three sewage treatment plants, the Bay Park Sewage Treatment Plant, the Cedar Creek Water Pollution Control Plant and the Glen Cove Treatment Plant. The VILLAGE OF FREEPORT currently collects sewage generated in the VILLAGE OF FREEPORT and pumps it into Nassau County facilities for treatment.

30.     Currently, the VILLAGE OF FREEPORT has 14,196 housing units that have outdated and aging sewer laterals connected to those homes. The average age of a house in VILLAGE OF FREEPORT is eighty years old, built prior to 1930. Homes in the VILLAGE OF FREEPORT average over 50 years, and their connections to the sewer collection system are also aging and beyond their lifespan. EPA and other government reports confirm that the lifespan of a cast iron sewer pipe is between 20 and 50 years. Thus, homes in the VILLAGE OF FREEPORT have sewer laterals that are well beyond their lifespan. This leads to breaks, leaks, cracks and a general breakdown in the condition of the pipe. The VILLAGE OF FREEPORT has been on notice of the lifespan of private property sewer laterals yet has chosen to address the condition of the public sewer collection system rather than the private side. The private side of the collection system makes up one-half of the entire collection system, so the VILLAGE OF FREEPORT has taken an illogical approach to reducing excess flows by failing to educate the public and provide a program to inspect and repair sewer laterals that will be beyond the means of residents of the VILLAGE OF FREEPORT. Reports show that 70% of infiltration causing excess flows and sanitary sewer systems are due to the private side

sewer laterals, yet the VILLAGE OF FREEPORT has taken no steps to assist residents and to reduce infiltration.

31.     Environmental studies have shown a need for additional capacity for the increased population in the VILLAGE OF FREEPORT and the increase in large development projects. These projects will add millions of gallons of sewage each day to the already strained sewer collection system in the VILLAGE OF FREEPORT. HUD and other funding sources for these projects are earmarked for sewer capacity projects, but not one of them will assist private property owners with private sewer lateral inspections and repairs. In large part, funding for sewer projects in the VILLAGE OF FREEPORT is mandated not to assist the community, but to give developers the required additional sewage capacity so that they may build their large development projects. While these developers are aware that the overall sewer collection system in the Village is far beyond its lifespan of Fifty years, the aging sewer collection system has not been addressed; monies are being spent to increase pump station capacity, but not to reduce flow and infiltration that already overloads the system. With expert studies concluding that excess flow and infiltration exceeds fifty percent of the flow generated to the treatment plants, reducing infiltration must be a major priority for the VILLAGE OF FREEPORT. The EPA has already reported that excess flows from private sewer laterals create sanitary sewer overflows, and that these flows are among the most serious and widespread operational challenges confronting treatment works. New York State law requires the operators of sewer treatment and collection facilities to take reasonable steps to reduce infiltration and excess flows, yet the VILLAGE OF FREEPORT has failed to take any steps toward compliance. Public education would be an appropriate first step.

32.     On January 1, 2015, Nassau County entered a contract with United Water for the operation of the Nassau County treatment works.  Pursuant to 6 NYCRR § 750-2.9, *Additional Conditions Applicable to a Publicly Owned Treatment Works*, a POTW has an obligation to "enact, maintain, and enforce or cause to be enacted, maintained and enforced up-to-date and effective sewer use law in all parts of the POTW service area. Such enactment and enforcement shall include intermunicipal agreements and/or other enforceable legal instruments that allow the permittee to control discharges, either directly or through jurisdictions contributing flows to the POTW, flow and loads to the POTW as well as discharges to the POTW."

33.     As a POTW, the New York State regulations apply to the VILLAGE OF FREEPORT sewer collection system, as does the Contract between the VILLAGE OF FREEPORT and the County of Nassau.

## PARTIES

34.     Plaintiff JASON MOORE is a "private attorney general" in this action. JASON MOORE is bringing this lawsuit to stop illegal pollution discharges, pursuant to the Clean Water Act. JASON MOORE utilizes the waters in and adjacent to the VILLAGE OF FREEPORT for recreation and swimming, as well as the navigable waters and beaches in the VILLAGE OF FREEPORT and its vicinity.

35.     § 504(a) of the CWA, 33 U.S.C.  § 1364(a), provides that notwithstanding any other provision of this chapter, a private citizen upon receipt of evidence that a pollution source or combination of sources is presenting an imminent and substantial endangerment to the health of persons ... may bring suit on behalf of the United States ...

20

to immediately restrain any person causing or contributing to the alleged pollution to stop the discharge of pollutants causing or contributing to such pollution or to take such other action as may be necessary."

36.     Citizen suits under the CWA allow for civil penalties as defined in 33 U.S.C. § 1319(d), which, in conjunction with 40 C.F.R. § 19.4 (which adjusts the amount for inflation), permits a court to impose civil penalties not to exceed $37,500 per day per violation of, inter alia, 33 U.S.C. § 1311. For violations on and before January 12, 2009, the limit is $32,500 per day per violation.

37.     Defendant VILLAGE OF FREEPORT is a municipality organized and existing under the laws and the Constitution of the State of New York with the power to sue and be sued. The VILLAGE OF FREEPORT collection system is located in the VILLAGE OF FREEPORT and is owned and maintained by the VILLAGE OF FREEPORT.  The collection system is part of the Nassau County Publicly Owned Treatment Works ("POTW") as defined by 6 NYCRR § 750-1.2(68). Pursuant to § 402 of the Clean Water Act ("CWA"), operators of small municipal separate storm sewer systems located in urbanized areas and those additionally designated by New York State are unlawful unless they are authorized by a National Pollutant Discharge Elimination System permit ("NPDES") or by a state permit program. New York's State Pollutant Discharge Elimination System ("SPDES") is an NPDES-approved program with permits issued in accordance with the Environmental Conservation Law ("ECL"). The Nassau County plants processes sewage, sludge and wastewater generated from the VILLAGE OF FREEPORT's sewer collection system, and the other satellite systems and residences in the County of Nassau.

21

38.     The VILLAGE OF FREEPORT is a "person" within the meaning of § 502(5) of the CWA, 33 U.S.C. § 1362(5), and a "municipality" within the meaning of § 502(4) of the CWA, 33 U.S.C. § 1362(4).

39.     The VILLAGE OF FREEPORT is responsible for the enforcement of the laws regulating sewer systems serving residential, commercial and industrial entities throughout the VILLAGE OF FREEPORT, State of New York.  This responsibility is non-delegable. This obligation includes the sewer use ordinances maintained in the VILLAGE OF FREEPORT.

40.     Plaintiff JASON MOORE uses and enjoys the waters of the Great South Bay and the waters surrounding and adjacent to the VILLAGE OF FREEPORT and thus has standing pursuant to the CWA. Plaintiff has curtailed his use of the bodies of water in and around the VILLAGE OF FREEPORT due to the VILLAGE OF FREEPORT'S lack of CWA compliance, the diminishment of the VILLAGE OF FREEPORT aesthetic and recreational areas, the routine and regular beach closings, the water conditions, the floating sewage in the water, and the overall diminished water quality caused by the VILLAGE OF FREEPORT'S failure to comply with CWA requirements.

### RELEVANT HISTORY OF THE CWA

41.     Studies dating back to the time period of the Clean Water Act have shown that the environment of the Long Island Sound and the Great South Bay is unique. The Long Island Sound and the Great South Bay contain sensitive bays, tributaries, streams, rivers, waterways, ponds and lakes. Many communities in shore communities around Long Island Sound and the Great South Bay rely on these water bodies for economic,

recreational and residential activities. These studies have demonstrated that the sensitivities of the Long Island Sound and the Great South Bay require great attention and concern to preserve the integrity of these resources.

42.    The Inhabitants of Long Island are completely dependent on groundwater and aquifers for their freshwater needs.  Aquifers gain precipitation by infiltration though soil. The VILLAGE OF FREEPORT is adjacent to salt water in the Great South Bay, and close to fresh water in the Hudson River. These are the soils that surround private and municipal sewer lines and laterals in the VILLAGE OF FREEPORT.

43.    Biologists and conservation groups have identified, since the enactment of the CWA, specific causes of groundwater, aquifer and waterway contamination in the Long Island Sound, the Great South Bay and on Long Island. These causes include storm water runoff, unlawful discharges from wastewater treatment plants, public sewer lateral leaks, private sewer lateral leaks, overflow of sewer systems, stray electric current corrosion of sewer laterals, and leaking and broken private sewer laterals caused by age, damage and the introduction of chemicals to household sewer systems. These water contaminants cause damage to sensitive ecosystems, including nitrogen loading and brown tide. Sewage treatment plants have multiple effects on nutrient levels in the water bodies that untreated sewage and effluent flow into. These effects on nutrient levels can have significant effects on the biological life in the water in contact with untreated effluent discharges. Studies have found high nutrient concentrations are directly linked to sewage effluents. High nutrient concentration leads to high chlorophyll, a concentration that is a proxy for primary production in marine environments. High primary production means

high phytoplankton populations. Simply put, effluent released into marine systems leads to greater marine population instability.

44.      The result of water contamination is beach closings; the altering of biological and marine systems; pollution of water bodies, destruction of groundwater and aquifers; and long-term destruction of sensitive marine populations. Sensitive estuaries and preserves cannot survive the result of contamination and the destruction of fish, plants and other lives in the water. These results are devastating to the Long Island Sound, the Great South Bay, Long Island, the County of Nassau and the VILLAGE OF FREEPORT, its citizens, lands and life.

45.      Water contamination destroys the Long Island Sound and Great South Bay ecosystems. Efforts to restore Long Island Sound and the Great South Bay to a positive ecological body have been diminished due to the VILLAGE OF FREEPORT'S failure to comply with the CWA and failure to take steps to prevent contamination caused by SSO'S and excess flow and contamination caused by infiltration and exfiltration.

46.      Municipalities and authorities in the United States have taken steps to prevent water contamination. These entities have enforced government CWA enforcement provisions, from financial penalties to enforcement proceedings. Many entities have educated their residents regarding private sewer lateral maintenance and laws requiring the inspection and replacement of damaged, leaking and outdated lateral sewer lines. Most entities have enacted local regulations, with reporting, monitoring and enforcement provisions. Since the EPA has determined that failing and leaking private sewer laterals are responsible for the highest percentage of infiltration in sewer systems, municipalities have taken important measures to remedy leaking and failing laterals. These

municipalities have recognized the need for controlling sewer lateral conditions so that infiltration of rain water and ground water into those laterals do not result in an increase in the flow to the wastewater treatment plant, which in turn cause sanitary sewer overflows, which cause beach closings and contamination of raw and untreated sewage.

47.     The VILLAGE OF FREEPORT has failed to control the overflow of untreated sewage into navigable waters surrounding the VILLAGE OF FREEPORT and at the Nassau County treatment plants. The VILLAGE OF FREEPORT has an outdated sewage system that is deteriorated. With residences within the VILLAGE OF FREEPORT municipal sewer system averaging older than Fifty (50) years, buried sewer laterals connecting residences to the municipal sewer mains are beyond their lifespan. The condition of these laterals has, and continues to be, unchecked. Broken and leaking sewer laterals are only found upon a homeowner's discovery, commonly a puddle in the front yard of the residence.  Ordinances enforcing the repair and maintenance of private property sewer laterals are not enforced. This deteriorated system includes public and private laterals with structural defects. The system is composed of old pipes and manhole covers, which allows lateral infiltration to overload the VILLAGE OF FREEPORT sewer system. While the VILLAGE OF FREEPORT can obtain systems and replacement items to ensure and maintain outdated system infrastructure, the VILLAGE OF FREEPORT has made no effort to seek CWA compliance. When these underground sewer laterals are overloaded with rainwater and groundwater infiltration, SSO'S result and the sewage overflows into water bodies and groundwater. The VILLAGE OF FREEPORT has failed to understand this problem and has failed to take remedial steps to resolve the problems caused by these issues. The VILLAGE OF FREEPORT has not maintained proper

records and has failed to make public documents that provide an overview of the VILLAGE OF FREEPORT sewer collection system.

48.     The VILLAGE OF FREEPORT is required to comply with the CWA by educating its residents about underground infiltration, the private property requirements of the CWA and by assisting residents to comply with the VILLAGE OF FREEPORT sewer use ordinance, at the very least. The VILLAGE OF FREEPORT has failed to initiate a public education program for its residents, has failed to update its current sewer use ordinance to require compliance with the CWA and has failed to assist its residents by offering a loan program or a repair program for the repair of private property sewer laterals or a program designed to comply with all of the CWA requirements referred to in this complaint.

49.     The VILLAGE OF FREEPORT is deficient in failing to maintain records regarding its compliance with its sewer use ordinance, and for failing to mandate compliance with its permits and obligations for the operation of the VILLAGE OF FREEPORT sewer collection system.

## RELEVANT STATUTORY OVERVIEW

50.     § 502(12) of the CWA, 33 U.S.C. § 1362(12), defines the term "discharge of pollutants" to include "any addition of any pollutant to navigable waters from any point source."

51.     § 502(6) of the CWA, 33 U.S.C. § 1362(6), defines the term "pollutant" to include, inter alia, "sewage . . . , biological materials . . . , and . . . municipal . . . waste discharged into water."

52.     § 502(7) of the CWA, 33 U.S.C. § 1362(7), defines the term "navigable waters" as "the waters of the United States, including the territorial seas."

53.     Part 122 of Title 40 of the Code of Federal Regulations, promulgated under the CWA to regulate the National Pollution Discharge Elimination System ("NPDES") permit program, defines "waters of the United States" to include, in relevant part, "all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide," and tributaries to such waters.  40 C.F.R. § 122.2(a) and (e).

54.     § 502(14) of the CWA, 33 U.S.C. §1362(14), defines the term "point source" to include "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit . . . from which pollutants are or may be discharged."

55.     § 402 of the CWA, 33 U.S.C. § 1342, provides that the Administrator may issue permits under the NPDES program for the discharge of pollutants into navigable waters of the United States upon such specific terms and conditions as the Administrator may prescribe.

56.     Pursuant to § 402(p) of the CWA, 33 U.S.C. § 1342(p), on November 16, 1990, the EPA promulgated regulations at 40 C.F.R. § 122.26(d) that set forth NPDES permit requirements to address discharges from large and medium treatment facilities and point sources.

57.     The CWA is a comprehensive statute designed "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C.  § 1251(a). To achieve that goal, § 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge

of pollutants" except as in compliance with an NPDES permit issued by the EPA or an authorized state pursuant to § 402 of the CWA, 33 U.S.C. § 1342. The CWA was established for the restoration and maintenance of chemical, physical and biological integrity of Nation's water and the elimination of pollutant discharges into navigable waters by 1985.

58.     The CWA defines the phrase "discharge of pollutants" to include "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). The CWA requires that all point source discharges to obtain a pollution control permit.

59.     Federal regulations promulgated pursuant to the CWA define the phrase "waters of the United States" to include, among other things, (i) all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide; (ii) all interstate waters; (iii) tributaries of these waters of the United States; and (iv) wetlands adjacent to the foregoing waters. 40 C.F.R. § 122.2.

60.     "Pollutant" within the meaning of the CWA includes ... solid waste ... sewage, garbage, sewage sludge ... biological materials ... and ... industrial, municipal, and agricultural waste discharged into water." 33 U.S.C.  § 1362(6).

61.     New York Codes, Rules and Regulations, contained in 6 NYCRR § 701, prohibits the discharge of sewage, industrial waste and other wastes that cause impairment of the best usages of the receiving waters.

62.     § 301 of the CWA prohibits a point source discharge into waters of the United States, including the Long Island Sound and the Great South Bay. The CWA requires treatment of pollutants to a degree that will comply with established water quality

standards. The CWA defines the term "point source" to mean "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit ... from which pollutants are or may be discharged." 33 U.S.C. § 1362(14). Point source discharges that are not permitted are illegal. § 301 of the CWA prohibits a point source discharge of pollutants into water bodies without a NPDES permit.

63.     § 402(a) of the CWA, 33 U.S.C. § 1342(a), establishes the NPDES permit system, and authorizes the EPA to issue permits for the discharge of pollutants, but only in compliance with § 301 of the CWA, 33 U.S.C. § 1311, and such other conditions as the EPA determines are necessary to carry out the provisions of the CWA.

64.     The State of New York has been and continues to be authorized by the Administrator of the EPA to implement the NPDES permit program for discharges into navigable waters within its jurisdiction pursuant to § 402(b) of the CWA, 33 U.S.C. § 1342(b).

65.     § 308(a) of the CWA, 33 U.S.C.  § 1318(a), states: "Whenever required to carry out the objective of this chapter, including but not limited to (1) developing or assisting development of any effluent limitation, or other limitation, prohibition, or effluent standard, pretreatment standard, or standard of performance under this chapter ... (3) any requirement established under this §; or (4) carrying out § ... 1342 [NPDES program] ... of this title 4 (A) the Administrator shall require the owner or operator of any point source to:  (i) establish and maintain such records, (ii) make such reports ... and (v) provide such other information as he may reasonably require."

66.     § 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the EPA to commence a civil action for appropriate relief, including a permanent or temporary injunction, when

any person violates, inter alia, §§ 301 or 308 of the CWA, 33 U.S.C. §§ 1311 or 1318, or violates any permit condition or limitation implementing such sections in a NPDES permit issued pursuant to § 402 of the CWA, 33 U.S.C. § 1342.

67.     § 309(d) of the CWA, 33 U.S.C.  § 319(d), provides that any person who violates §s 301 and 308 of the CWA, 33 U.S.C.  §§ 1311 and 1318, or violates any permit condition or limitation implementing such §s in a NPDES permit issued pursuant to § 402 of the CWA, 33  U.S.C. § 1342, shall be subject to a civil penalty not to exceed $27,500 per day for each violation occurring between January 30, 1997 and March 15, 2004; $32,500 per day for each violation occurring between March 16, 2004, and January 12, 2009; and $37,500 per day for each violation occurring after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, § 4, 104 Stat. 890 (1990), 28 U.S.C. § 2461 note (as amended).  See also 40 C.F.R. § 19.4.

68.     The NYSDEC has jurisdiction to protect the waters of the State pursuant to the Environmental Conservation Law ("ECL"), Article 17, and the State's SPDES permit program. ECL § 17-0511 states that "the use of existing or new outlets or point sources, which discharge sewage, industrial waste or other wastes into waters of this state is prohibited unless such use is in compliance with all standards, criteria, limitations, rules and regulations promulgated or applied by the department pursuant to this article." Thus, it is a violation of the ECL Article 17 to discharge pollutants without obtaining a permit in accordance with CWA § 402, 33 U.S.C. § 1342, or the ECL Article 17.

69.     ECL § 71-1929 provides that any person who violates any provision of Titles 1 through 11 inclusive and title 19 of Article 17 of the ECL or any rule or regulation, order or determination of the NYSDEC Commissioner promulgated thereunder shall be liable

for a civil penalty of up to Thirty Seven Thousand Five Hundred Dollars ($37,500).

Injunctive relief is also available.

70.     New York State has issued regulations, under 6 NYCRR Part 750, that provide

for "Obtaining A SPDES Permit" and "Operating In Accordance With A SPDES

Permit." 6 NYCRR § 750-1.2(17) defines the term "bypass" to mean "the intentional or

unintentional diversion of wastewater or storm water around any portion of a treatment

facility having the effect of reducing the degree of treatment designed for the bypassed

portion of the treatment facility."

71.     6 NYCRR § 750-1.2(26) defines the term "discharge" to mean "any addition of

any pollutant to waters of the State through an outlet or point source."

72.     6 NYCRR § 750-1.2(28) defines the term "Discharge Monitoring Report" (DMR)

to mean "a report submitted by a permittee to the department summarizing the effluent

monitoring results obtained by the permittee over periods of time as specified in the

SPDES permit."

73.     6 NYCRR § 750-1.2(45) defines the term "infiltration" to mean "water other than

wastewater that enters a sewerage system (including sewer service connections) from the

ground through such means as defective pipes, pipe joints, connections, or manholes.

Infiltration does not include and is distinguished from inflow."

74.     6 NYCRR § 750-1.2(46) defines the term "inflow" to mean "water other than

wastewater that enters a sewerage system (including sewer service connections) from

sources such as roof leaders, cellar drains, yard drains, area drains, foundation drains,

drains from springs and swampy areas, manhole covers, cross connections between storm

sewers, process and sanitary sewers, catch basins, cooling towers, storm waters, surface

runoff, street wash waters, or drainage. Inflow does not include, and is distinguished from infiltration."

75.     6 NYCRR § 750-1.2(51) defines the term "Municipality" to mean "any county, town, city, village, district corporation, special improvement district, sewer authority or agency thereof."

76.     6 NYCRR § 750-1.2(52) defines the term "Municipal Sewage" to mean "wastewater composed primarily of discharges of sanitary sewage from residences, primarily from facilities not owned by a municipality, with or without the admixture of industrial wastewater." This term includes collection systems under contract and residences within the permit area.

77.     6 NYCRR § 750-1.2(58) defines the term "outfall" to mean "the terminus of a sewer system, or the point of emergence of any waterborne sewage, industrial waste or other wastes or the effluent there from, into the waters of the state."

78.     6 NYCRR § 750-1.2(59) defines the term "outlet" to mean outfall.

79.     6 NYCRR § 750-1.2(61) defines the term "partially treated" to mean "receiving some level of treatment, but not enough treatment to meet all effluent limits."

80.     6 NYCRR § 750-1.2(63) defines the term "permittee" to mean "the holder of a SPDES permit." A permittee includes collection systems that contribute to sewage flowing to the permitted facility.

81.     6 NYCRR § 750-1.2(64) defines the term "person or persons" to mean "any individual, public or private corporation, political subdivision, government agency, municipality, partnership, association, firm, trust, estate or any other legal entity whatsoever."

82.     6 NYCRR § 750-1.2(68) defines the term "Publicly owned treatment works" (POTW) to mean "any device or system used in the treatment (including recycling and reclamation) of municipal sewage that is owned by a municipality. This definition includes sewers, pipes, or other conveyances only if they convey wastewater to a POTW providing treatment." This definition includes the VILLAGE OF FREEPORT collection system.

83.     6 NYCRR § 750-1.2(77) defines the term "sewage" to mean "the water-carried human or animal wastes from residences, buildings, industrial establishments or other places, together with such groundwater infiltration and surface water as may be present."

84.     6 NYCRR § 750-1.2(81) defines the term "Sewer system" to mean "pipe lines or conduits, pumping stations, force mains, and all other constructions, devices, and appliances appurtenant thereto, used for conducting storm water, sewage, industrial waste or other wastes, alone or in combination to a disposal system." This term includes the VILLAGE OF FREEPORT collection system.

85.     6 NYCRR § 750-1.2(95) defines the term "wastewater" to mean "water that is not storm water, is contaminated with pollutants and is or will be discarded."

86.     Under 6 NYCRR § 750-2.7, a bypass, an upset or any other sewage-related incident shall be reported orally within two hours of becoming aware of the discharge, for discharges of untreated or partially treated sewage that would affect bathing areas during the bathing season or shell fishing, and within 24 hours for all areas. A written report of a bypass, upset or other sewage-related incidents shall also be provided within five (5) days of the time the permittee becomes aware of the circumstances. In addition, this provision calls for a duty to mitigate: "The permittee shall take all reasonable steps to minimize or

prevent any discharge in violation of the permit, which has a reasonable likelihood of adversely affecting human health or the environment."

87.     Under 6 NYCRR § 750-2.9, Additional Conditions Applicable to a Publicly Owned Treatment Works, a POTW has an obligation to "enact, maintain and enforce or cause to be enacted, maintained and enforced up-to-date and effective sewer use law in all parts of the POTW service area. Such enactment and enforcement shall include intermunicipal agreements and/or other enforceable legal instruments that allow the permittee to control discharges, either directly or through jurisdictions contributing flows to the POTW, flow and loads to the POTW as well as discharges to the POTW."

88.     EPA reports require municipal collection system communities to reduce infiltration from private property in order to comply with EPA satellite community enforcement as a POTW. *(EPA, Permitting Approach for Publicly Owned Treatment Works that include Municipal Satellite Sewage Collection Systems)*

89.     New York State laws and regulations also control the VILLAGE OF FREEPORT sewer collection system:

a. DEC Regulation 750-2.9
…removing excessive infiltration/inflow to an extent that is economically feasible to comply with the County's NPDES and SPDES discharge permits.

b. New York State Building Code 1222.1:
Commissioner/Superintendent of Public Works is required to insure that sewer laterals are in good working condition … the erection, installation, alteration, repair, relocation, replacement, addition to, use or maintenance of plumbing systems … and sanitary collection systems, shall comply with the requirements of the International Plumbing Code.

c. International Plumbing Code:
§ 102: Plumbing systems to be maintained in proper and sanitary condition
§ 104: Code Official responsible to enforce the Code
§ 702: Orangeburg Pipe is not permitted
§ 701: Sewage may not be discharged into the ground

d. Nassau County Sewer Ordinance:

§ 1. This Ordinance shall apply to the County of Nassau and to persons who are by contract or agreement with the County Users of the County POTW.

§ 4.3.1. No user shall contribute excess flow to the County system

§ 14.4. The maintenance, repair and operation of a building sewer to the point of connection to the public sewer shall be the owner's responsibility and shall conform to the rules and regulations of the County now in force or hereinafter adopted.

e. Nassau County Public Health Ordinance:

§ 8. Every owner, agent, lessee or tenant, who shall be responsible for the plumbing or sanitary facilities of a building or dwelling shall, each to the extent of his responsibility, maintain each and every plumbing fixture, pipe, drain, sewer and sewer connection of such building or dwelling in a sanitary condition and shall remove stoppages, repair leaks, and replace broken, worn or faulty fixtures or pipes which shall be the cause of an unsanitary condition …

f. IMA between FREEPORT and Nassau:

… the Village shall at its own cost and expense maintain the sewage collection facilities within the Village so that said sewage collection facilities may be operated efficiently and effectively …

… The County will provide rules and regulations for the use of all collection systems … and such rules and regulations shall govern and control the use of the sewage collection facilities so connected and maintained by the Village under this agreement.

## COMPLIANCE

90.     Studies conducted by governmental and not for profit experts have determined that excess flow into outdated sewage treatment plants is due to infiltration into aged sewer pipes. The average home in the VILLAGE OF FREEPORT is over Fifty (50) years old. The cast iron sewer pipes buried in the front yards of these homes are commonly over Fifty (50) years old and are beyond their lifespan. The Federal Congressional Budget Office and the EPA estimates that the lifespan of a cast iron sewer line is between Thirty (30) and Fifty (50) years. Thus, these sewer lines must be repaired or replaced to prevent infiltration, thereby allowing the VILLAGE OF FREEPORT sewer collection systems and the Nassau County wastewater treatment plants to function effectively,

35

without leaking into the ground, aquifers and overflowing into the Long Island Sound and the Great South Bay. Excess infiltration into the VILLAGE OF FREEPORT sewer system results in the unlawful and unpermitted discharge of raw and untreated sewage into waters and tributaries surrounding and adjacent to the VILLAGE OF FREEPORT.

91.    EPA studies have revealed that corrosion of outdated sewer lines results in sewer line failure, with a recent survey showing almost half of all cities surveyed reporting sewer collapses from corrosion. Sewer collapses are caused by rainfall- derived infiltration of extraneous rainwater and groundwater to sanitary sewers that unduly affect the capacity and operation of collection and treatment systems. Excessive infiltration is a significant cause of sanitary sewer overflows and basement backups. While utilities and municipalities invest significant resources to reduce infiltration through sewer rehabilitation and replacement, and private property efforts to eliminate sources of infiltration, the VILLAGE OF FREEPORT has not done that and has not demanded that the County of Nassau assist the VILLAGE OF FREEPORT with improvements to infrastructure assets and technical direction as contained in the contract between the VILLAGE OF FREEPORT and the County of Nassau to assure adequate system capacity. Application of sound methods and programs to reduce infiltration in the collection system would assist residents, the collection system in the VILLAGE OF FREEPORT and the treatment plants in the County of Nassau. These methods and programs need to support infiltration reduction and remediation programs that will effectively mitigate SSOs.

92.    When the VILLAGE OF FREEPORT entered a contract with the County of Nassau to utilize the Nassau County wastewater treatment plants, rather than the

VILLAGE OF FREEPORT treatment plant, the VILLAGE OF FREEPORT agreed to comply with the Nassau County Sewer Ordinance and any other ordinances that applied, including the Nassau County Public Health Ordinance and New York State and federal statutes and regulations. The VILLAGE OF FREEPORT began its connection to the Nassau County sewer system in 1979. However, the VILLAGE OF FREEPORT has failed to protect its citizens by a public education program, by failing to enforce the applicable laws and their own sewer use ordinance, and by a failure to communicate with the County of Nassau for compliance with the contract. The VILLAGE OF FREEPORT maintained its ownership of the sewer collection system, and for the private sewer laterals in the VILLAGE OF FREEPORT. The State's DEC regulations require the permit holder of a POTW to identify all inflow to the tributary system and remove excessive infiltration and inflow. (750-2.9).  The County of Nassau has failed to enforce this regulation in the VILLAGE OF FREEPORT and the VILLAGE OF FREEPORT has failed to reciprocally comply.

93.    The requirements under the Nassau County IMA with the VILLAGE OF FREEPORT are that "… the Village shall at its own cost and expense maintain the sewage collection facilities within the Village so that said sewage collection facilities may be operated efficiently and effectively … and that … the County will provide rules and regulations for the use of all collection systems." The terms of the IMA have not been complied with by either party.

94.    The County of Nassau entered a contract with United Water in 2015.  That contract does not require United Water to manage the collection system in the VILLAGE OF FREEPORT, and thus the VILLAGE OF FREEPORT is solely responsible for

maintaining the collection system in the VILLAGE OF FREEPORT. The VILLAGE OF

FREEPORT is responsible for complying with the IMA with the County of Nassau and

taking steps and measures to ensure that the flow from the VILLAGE OF FREEPORT

collection system does not contain excess flow that will violate Nassau County, New

York State and Federal laws, rules and regulations. Excess flow from leaking, broken and

aging sewer laterals do violate those laws.

95.     The VILLAGE OF FREEPORT has negligently placed its residents and citizens

in a position of violating the CWA and exposing those residents and citizens to potential

fines in the millions of dollars for violations of the CWA going back years, and

continuing into the future. The VILLAGE OF FREEPORT has failed to inform and

educate its residents about the requirement of the CWA and their residents' exposure to

fines and increased sewer rates. Plaintiff JASON MOORE asks that the Court order that,

as a matter of public policy,  that the interests of residents of the VILLAGE OF

FREEPORT are unprotected and that damage is occurring to the water bodies utilized by

JASON MOORE as the result.


**THE DEFICIENCIES**

96.     The VILLAGE OF FREEPORT has failed to establish a sewer system assessment

program for its sewer collection system and the private property sewer laterals as part of

that collection system. The VILLAGE OF FREEPORT is required to undertake field tests

and inspections to diagnose problems with its sewer collection system and to identify and

establish solutions for reducing infiltration flows and unpermitted discharges. The

VILLAGE OF FREEPORT does not have a plan for closed circuit television ("CCTV"),

fog testing or dye testing, or other methods, for the examination of sewer lines and laterals to determine the condition of their public and private sewer infrastructure. Without a plan, the VILLAGE OF FREEPORT is permitting its sewer infrastructure to rapidly deteriorate and to ultimately leave residents with shattered and ineffective sewer lines discharging raw sewage directly into the ground, on public, and on private property.

97. Municipalities have a continuing obligation to maintain and repair the tributary sewer systems within their borders such that they comply with the CWA. The VILLAGE OF FREEPORT fails horribly in complying with this important obligation. The VILLAGE OF FREEPORT does not conduct flow monitoring for the VILLAGE OF FREEPORT collection system that would disclose the condition of their sewer infrastructure. The VILLAGE OF FREEPORT does not monitor increased flow at times of high tide and excessive rainfall to determine the extent of excessive infiltration from particular areas within its collection system and to determine particular houses that are infiltrated by rain water and ground water during wet weather events. Unfortunately, although Nassau County is aware that millions of gallons of wastewater pass through the County treatment plants, and that flow rates are important to be observed, this information is still not provided to the VILLAGE OF FREEPORT as required by the contract between Nassau County and the VILLAGE OF FREEPORT so that steps and action could be taken by residents, conservation groups and the municipality to monitor and observe the results of flow monitoring and excess flow.

98. PLAINTIFF JASON MOORE submits that this lack of action has put residents of Nassau County and the VILLAGE OF FREEPORT in jeopardy, and that contamination of water bodies is ongoing and is dangerous. The condition of the sewer infrastructure in

the VILLAGE OF FREEPORT is not able to be determined due to a lack of testing and monitoring, and by a lack of enforcement of the Nassau County IMA, and that this failure to disclose this imperative information is in violation of the CWA and state and local regulations, laws and ordinances.

99.     The VILLAGE OF FREEPORT is not the only municipality in the United States that is faced with a deteriorating infrastructure system. The VILLAGE OF FREEPORT is not alone in experiencing daily overflow in the County sanitary sewer systems during periods of rain; basement overflows in resident's basements and beach closures are the result. However, most municipalities are aware of their obligations regarding excessive infiltration and unlawful contamination from treatment plants as these excess and illicit flows and discharges violate the CWA.

## GENERAL ALLEGATIONS

100.     Plaintiff repeats and reiterates all of the allegations contained in paragraphs "1" to "99".

101.     At all relevant times, the VILLAGE OF FREEPORT has owned, operated and maintained responsibility for the sewer collection and transmission systems, which receives and treats wastewater from residential, commercial and industrial sewage sources within the VILLAGE OF FREEPORT.

102.     The manholes, sewer lines, and other connections in the VILLAGE OF FREEPORT collection system and various other confined discrete conveyances within the sanitary collection system from which pollutants are discharged, are "point sources," within the meaning of § 502(14) of the CWA, 33 U.S.C. § 1362(14).

103.   The VILLAGE OF FREEPORT is responsible for the enforcement of its sewer use ordinance which regulates discharges that are "point sources," within the meaning of § 502(14) of the CWA, 33 U.S.C. § 1362(14) in the VILLAGE OF FREEPORT.

104.   The VILLAGE OF FREEPORT'S sewer system is intended to keep sewage and other wastewater in the collection system without unlawful discharge or leak and to keep rainwater out of the collection system, so that the sewer collection system discharges directly to the Nassau County sewer treatment plants without excess and illegal flows.

105.   At all relevant times, the VILLAGE OF FREEPORT has "discharged pollutants," including raw sewage, from "point sources" within the meaning of § 502(14) of the CWA, 33 U.S.C. § 1362(14), to waters of the United States, including, inter alia, the Long Island Sound, Great South Bay, groundwater, aquifers and tributaries, within the meanings of § 502(7) of the Clean Water Act, 33 U.S.C. § 1362(7) and the federal regulations implementing the CWA at 40 C.F.R. § 122.2.

106.   Pursuant to § 402 of the Act, 33 U.S.C. § 1342 and the New York Clean Water Law, Chapter 644 of the New York Revised Statutes, and the implementing regulations at 10 CSR 20-1.010, the VILLAGE OF FREEPORT is a satellite collection system under the Nassau County NPDES permit for its wastewater treatment systems.

107.   At all relevant times, the VILLAGE OF FREEPORT has violated, and continues to violate, §§ 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by failing to meet the conditions contained in that NPDES permits and by discharging and permitting pollutants to be discharged in violation of issued SPEDES and NPDES permits.

108.   These discharges of untreated wastewater from the VILLAGE OF FREEPORT'S sewer system that contribute high levels of pollutants, including sewage, heavy metals,

toxics, oil and grease, solvents, nutrients, viruses, and bacteria to water bodies receiving discharges from outfalls and leaking sewer lines and laterals. Health risks associated with sewage in water expose humans and fish to a variety of bacterial pathogens, including E-Coli. Diseases associated with waterborne infections include gastroenteritis, hepatitis, skin infections, wound infections, conjunctivitis, respiratory infections and generalized infections. Swimming sometimes results in the unintentional ingestion of recreation water contaminated with pathogens, which can lead to illness. Fecal contaminated waters can cause illness of the ear, eyes and skin.

109.    The U.S. Congress passed the Clean Water Act (CWA) in 1972 to help protect the country's water resources. The Act was created to regulate all types of discharges to U.S. waterways, and has significantly reduced direct pollutant discharges, funded the construction of municipal wastewater treatment facilities and requires management of polluted stormwater runoff.  "Direct pollutant discharges" include wet weather sewer overflows from combined sewer and sanitary sewer systems, discharges from municipal sewage plants and industrial facilities and stormwater runoff from streets, construction sites, farms, etc.  Under the CWA, all overflows from sanitary sewers (designed to carry wastewater only) are prohibited and overflows from combined sewers (designed to carry wastewater and stormwater in the same pipe) must be reduced to only a few each year.

110.    The VILLAGE OF FREEPORT has failed to enforce its sewer use ordinance by the issuance of summonses, citations and orders; by failing to educate residents regarding the sewer use ordinance and the causes of violations of that ordinance; by failing to enforce the terms of its contract with the County of Nassau upon learning of unpermitted discharges; and by failing to undertake a program for the repair and maintenance of

private sewer laterals to assist residents of the VILLAGE OF FREEPORT to comply with the laws, rules and regulations that apply to the CWA and the VILLAGE OF FREEPORT sewer use ordinance.

111.   The VILLAGE OF FREEPORT'S unpermitted discharges of raw sewage have resulted from multiple causes including, inter alia, inadequate flow capacity in the collection system and at the Nassau County wastewater treatment plants; inability to use wastewater pumps at capacity due to aged and corroded pipes and force mains; illegal and improper cross-connections between sanitary sewers and poor maintenance of its collection system including breaks and blockages in sewer pipes, force mains and manholes.

112.   The VILLAGE OF FREEPORT failed to inspect sewer lines and report the results to the DEC and EPA, and take steps to identify and remedy leaking laterals that contaminate waterways and aquifers. Testing, repair, maintenance, renovation and replacement of private and public sewer laterals would create compliance with the CWA, the EPA, and the DEC by reducing infiltration and SSO's.

113.   The VILLAGE OF FREEPORT failed to prevent SSO's by failing to study, identify and fix leaking sewer laterals.

114.   The VILLAGE OF FREEPORT failed to require property owners to repair and replace leaking sewer systems and laterals.

115.   The VILLAGE OF FREEPORT failed to maintain reports as required by the CWA.

116.   Despite significant water quality violations associated with discharges from its sewer system, the VILLAGE OF FREEPORT has not updated its sewer system to satisfy

CWA requirements – including but not limited to the requirement that it reduce the discharge of pollutants to the maximum extent practicable – and to incorporate measures or controls necessary to ensure compliance with the permit's prohibitions against the violation of water quality standards, the discharge of toxins in toxic amounts and the discharge of dangerous amounts of Mercury.

117.   The VILLAGE OF FREEPORT failed to establish and initiate a program for the testing, repair, maintenance, renovation and timely replacement of public and private building and private property sewer laterals connected to the VILLAGE OF FREEPORT'S waste water collection system, designed to protect the public health, safety and welfare of the VILLAGE OF FREEPORT by preventing and mitigating harmful discharges of untreated waste and wastewater into the environment through leaking and unsound sewer laterals.

118.   The VILLAGE OF FREEPORT failed to establish a comprehensive program that enforces routine maintenance of public and private property sewer laterals, which fosters compliance with the requirements of the CWA and the EPA. This comprehensive program must have established a system for the reduction of infiltration, and sewer system spills and overflows and infiltration to the sanitary sewer system.

**FIRST CLAIM FOR RELIEF: VIOLATION OF THE PROPER OPERATION AND MAINTENANCE CONDITIONS CONTAINED IN THE VILLAGE OF FREEPORT'S SPDES AND NPDES PERMIT**

119.   Plaintiff repeats and reiterates all of the allegations contained in paragraphs "1" to "118".

120.     Pursuant to 40 C.F.R. § 122.41(e), the VILLAGE OF FREEPORT'S operates

under the County of Nassau NPDES permits that contains the following standard

condition at Part 1.B.3: "Permittees shall operate and maintain facilities to comply with

the New York Clean Water Law and applicable permit conditions. Operators or

supervisors of operations at publicly owned or publicly regulated wastewater treatment

facilities shall be certified in accordance with 10 CSR 209.020(2) and any other

applicable law or regulation." Part I.B.4 of the Nassau County permit requires that "the

permittee shall take all necessary steps to minimize any adverse impact to waters of the

state resulting from noncompliance with any effluent limitations specified in this permit

or set forth in the New York Clean Water Law and Regulations" (hereafter Part I.B.3&4

collectively referred to as "Proper Operation and Maintenance Condition".

121.     The VILLAGE OF FREEPORT is required to comply with the Nassau County

permit as a satellite collection system, and by virtue of the contract between the County

of Nassau and the VILLAGE OF FREEPORT, by employing the best practicable control

technology available to meet the County NPDES permit. Controls must include the

proper operation and maintenance of the VILLAGE OF FREEPORT sewer system.

Without compliance with that permit, the VILLAGE OF FREEPORT causes an imminent

danger that discharges from private and public sewer lines and laterals, and the Nassau

County sewage plants, will cause ecological pollution and health risks. In fact, the current

ECHO site clearly illustrates the result of the violations of the County's permits and a

direct cause is the VILLAGE OF FREEPORT'S failure to comply with the County

permit, the County contract and CWA obligations.

122. The illegal discharges alleged in this complaint resulted, in whole or in part, from the VILLAGE OF FREEPORT'S failure to comply with the "Proper Operation and Maintenance Condition" of the County NPDES Permits (Part I.B.3&4), in violation of § 402 of the CWA, 33 U.S.C. § 1342. The Nassau County Treatment Facilities have been in violation for years. Presently, Bay Park is in violation for Copper, Coliform and Chlorine level exceedances and Glen Cove is in violation for Fecal Coliform exceedances. The Cedar Creek Wastewater Treatment Plant has been in violation for excess coliform discharge for years. The deplorable condition of the collection system in the VILLAGE OF FREEPORT is a major cause of these violations.

123. Each day the VILLAGE OF FREEPORT fails to comply with the "Proper Operation and Maintenance Condition" of the County NPDES permits (Part 1.B.3&4) constitutes a separate violation of §§ 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342.

124. The VILLAGE OF FREEPORT is liable for civil penalties of up to $27,500 per day for each violation occurring between January 30, 1997 and March 15, 2004; up to $32,500 per day for each violation occurring between March 16, 2004 and January 12, 2009; and up to $37,500 per day for each violation occurring after January 12, 2009, pursuant to §§ 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d); and the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, § 4, 104 Stat. 890 (1990), 28 U.S.C. § 2461 (as amended). See also, 40 C.F.R. § 19.4. It is respectfully requested that the Court issue fines and penalties pursuant to the CWA against the VILLAGE OF FREEPORT. The total amount of fines to be imposed against the VILLAGE OF FREEPORT, from the notice date to present, are in the amount of

$51,570 per day for each violation until January 14, 2017, and $52,414 per day for each violation subsequent to January 14, 2017, pursuant to § 309 of the Clean Water Act, 33 U.S.C. 1319(d) and the Federal Civil Penalties Inflation Adjustment Act of 1990, for a total fine of Fifty Seven Million, Seven Hundred Seventy Four Thousand ($57,774,420.00) Dollars.

125.     Unless enjoined by an order of the Court, the VILLAGE OF FREEPORT will continue to violate §§ 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by failing to comply with the "Proper Operation and Maintenance Condition" of its NPDES permits (Part I.B.3&4).

126.     The VILLAGE OF FREEPORT must be required to submit an assessment of its collection system, including its private property collection/lateral system. This assessment will assist in making a determination as to the condition of the VILLAGE OF FREEPORT collection system infrastructure, the prevention of future SSO's, the prevention of future lateral leaks, and the methods to test, analyze and repair leaking laterals to prevent infiltration and the resulting SSO's. The report must address causes of SSO's; short-term and long-term actions required to address deficiencies; and a schedule for implementation of an action plan.

127.     The VILLAGE OF FREEPORT must be ordered to develop a written Capacity, Management, Operation, and Maintenance ("CMOM") Program to enhance its existing programs related to management, operation, and maintenance of its collection system including private sewer laterals. The CMOM Program shall establish, and describe in writing, how the VILLAGE OF FREEPORT will comply with the CWA by providing

public education to residents, assistance with private lateral repairs to prevent infiltration, and a program to reduce excess flows.

128.    The VILLAGE OF FREEPORT must be required to educate the public, and themselves, on the impact that Hydrogen Sulfide has on the public side of the collection system as well as on the private side. Hydrogen Sulfide results from the conversion of hydrogen sulfide gas converting to sulfuric acid in the presence of moisture within sewer pipes and it then directly attacks cast iron, the material used for sewer pipes on private property in the VILLAGE OF FREEPORT.  Hydrogen Sulfide gas is responsible for the corrosion of sewer pipes including connections and other metal components in the collection system. Corrosion occurs most frequently in gravity sewers in which oxygen is depleted due to the activity of microorganisms where there is limited velocity of sewage, such as a sewer lateral on private property. The damage caused by these gases is on the top of the sewer lateral resulting in a crack that permits the infiltration of groundwater and rainwater into the collection system, as well as the exfiltration of the raw sewage in the sewer lateral that escapes and contaminates the surrounding soil, ultimately travelling to the sole source aquifer that provides drinking water to Long Island residents. The infiltration of ground water and rainwater causes excess flow to the collection system and ultimately to the Nassau County wastewater treatment facilities where overflows occur. The VILLAGE OF FREEPORT has been on notice each time a SSO occurs, and by compiling and reporting their own daily monitoring reports that are required by SPDES and NPDES permits. The VILLAGE OF FREEPORT has failed to take any action and that is direct evidence of the willingness of the VILLAGE OF FREEPORT to violate the CWA and pay fines rather than take steps to remedy the problems, educate the public,

provide programs to the public to assist in repairing the private side, and to take steps to monitor, inspect, repair and replace the sewer collection infrastructure in the VILLAGE OF FREEPORT that is beyond its lifespan and is damaged and leaking.

129.    The VILLAGE OF FREEPORT must be required to conduct a study of all cast iron sewer lateral pipes to determine the impact of Hydrogen Sulfite on the condition of the pipes, particularly related to cracks on the top of the pipes, that allow rainwater and groundwater infiltration into the pipes causing SSO's and bacteria.

130.    The VILLAGE OF FREEPORT must be required to compile an accurate and up-to-date mapping program showing the exact location of all private property sewer laterals and spur connections of those laterals. A mapping program is required by the EPA and must be available to prevent cross-boring and damage to not only underground sewer laterals but to other infrastructure such as water lines and telephone cables. The VILLAGE OF FREEPORT permits the digging of trenches on private property without the knowledge of the location of buried sewer pipes, and also permits cross connections and open connection ends of sewer laterals to continue in use while those laterals permit exfiltration of raw sewage into the ground. The American Public Works Association reports that an underground utility line is hit, on average, every sixty (60) seconds, costing billions of dollars in the United States, creating safety issues and leaks.


**SECOND CLAIM FOR RELIEF**
**VIOLATION OF THE SPECIAL CONDITIONS OF VILLAGE OF FREEPORT**
**ORDINANCES AND NASSAU COUNTY OPERATING PERMITS**

131.    Plaintiff repeats and reiterates all of the allegations contained in paragraphs "1" to "130".

132.    Contamination of urban groundwater by sewage leakage from damaged sewers is an increasing matter of public and regulatory concern. Millions of gallons of waste water leaks every year from partly damaged sewerage systems into soil and groundwater. In many cities damaged sewerage systems are the main sources for groundwater contamination with sulphate, chloride and nitrogen compounds. Besides the ecological point of view, damaged sewerage systems exhibit essential economic problems because groundwater can also infiltrate into the sewers. Urban groundwater, such as the VILLAGE OF FREEPORT, has specific features such as extensive sealing of surfaces, leaking water mains, sewers, and stormwater recharge as well as basements, tunnels and extensive paved surfaces. The quality of urban groundwater is affected by the input of urban features such as leaky sewerage systems, both industrial and urban wastewater. The impacts of leaky sewerage systems are determined and affected by leakage detection for old sewers and sewerage systems in areas with fluctuating groundwater tables. There is a direct correlation between damaged sewerage systems, soil and groundwater and contamination. JASON MOORE demands that these studies be mandated to take place.

133.    The VILLAGE OF FREEPORT has a sewer use ordinance at § 176-10. That Ordinance provides, in pertinent part, that:

> b. All building lateral and building sewer connections must be maintained in good working condition at the expense of the property owner. All necessary repairs shall be promptly made at the expense of the property owner.

134.    The VILLAGE OF FREEPORT does not comply with its own ordinance, in that it does not issue summons, does not fine residents, does not inspect sewer laterals on private

property, and the municipal spur connection, to require cast iron sewer lines rather than Orangeburg, fiber and other outdated and illegal connections.

135. JASON MOORE requests that the Court issue an order requiring the VILLAGE OF FREEPORT to comply with the within ordinance and other applicable ordinances.

136. The VILLAGE OF FREEPORT must commence a program to assist residents with private property sewer lateral repairs once the VILLAGE OF FREEPORT is directed to take action to prevent continued violations of the CWA.

137. Nassau County's NPDES permits contain the following General Criteria Special Condition:

> (b) General Criteria. The following general water quality criteria shall be applicable to all waters of the State at all times. No water contaminant, by itself or in combination with other substances, shall prevent the waters of the state from meeting the following conditions:
> (1) Waters shall be free from substances in sufficient amounts to cause the formation of putrescent, unsightly or harmful bottom deposits or prevent full maintenance of beneficial uses;
> (2) Waters shall be free from oil, scum and floating debris in sufficient amounts to be unsightly or prevent full maintenance of beneficial uses;
> (3) Waters shall be free from substances in sufficient amounts to cause unsightly color or turbidity, offensive odor or prevent full maintenance of beneficial uses; and
> (4) Waters shall be free from substances or conditions in sufficient amounts to result in toxicity to human, animal or aquatic life.

138. The Nassau County Glen Cove wastewater treatment plant discharges of high Carbonaceous Oxygen Demands ("COD") levels, high Mercury levels and high Suspended Solids levels create conditions whereby the receiving waters are caused to increase in toxicity to animal and aquatic life. Pathogens in raw sewage can also cause a number of diseases in humans such as gastroenteritis, dysentery, and cholera. These

diseases are communicable, and may result in toxicity to humans and/or create a significant human health hazard from incidental contact with these waters.

139.    On the occasions described herein, and upon information and belief continuing to the present, the County of Nassau has failed to comply with the General Criteria Special Conditions of its NPDES Permits in violation of § 402 of the CWA, 33 U.S.C. § 1342 due, in part, to the discharge of excess levels of sewage from the VILLAGE OF FREEPORT collection system.

140.    Each day VILLAGE OF FREEPORT fails to comply with the General Criteria Special Condition of its NPDES Permits constitutes a separate violation of §§ 301(a) and 402 of the CWA, 33U.S.C. §§ 1311(a) and 1342.

141.    The VILLAGE OF FREEPORT has failed to establish and initiate a program for the testing, repair, maintenance, renovation and timely replacement of public and private building and private property sewer laterals connected to the VILLAGE OF FREEPORT's waste water collection system, designed to protect the public health, safety and welfare of the VILLAGE OF FREEPORT by preventing and mitigating harmful discharges of untreated waste and wastewater into the environment through leaking and unsound sewer laterals. The VILLAGE OF FREEPORT violates the CWA and its contract with the County of Nassau by allowing contamination from unchecked sewer lines and laterals as part of the VILLAGE OF FREEPORT sewer collection system to transport and leak untreated effluent which cause discharges in violation of the Nassau County NPDES permit into water bodies.

142.    The VILLAGE OF FREEPORT has failed to establish a comprehensive program that enforces routine maintenance of public and private property sewer laterals, which

fosters compliance with the requirements of the CWA and the EPA. This comprehensive program must have established a system for the reduction of infiltration and sewer system spills and overflows.

143.    The VILLAGE OF FREEPORT has failed to educate residents and establish a program to promote, maintain, correct, require and inspect private property sewer laterals, and failed to perform the following required acts:

a)      Educate private property owners on the discovery of broken sewer laterals and infrastructure on private property, and the resulting financial and lack of insurance coverage issues for fixing those broken and leaking laterals;

b)      Establish a review process for opening and closing permit applications to ensure that laterals problems are resolved at the particular building where the permit was approved and other buildings in the vicinity and in the VILLAGE OF FREEPORT, considering the related ages of lateral pipes, proximity to navigable waters, proximity to train tracks, and other issues that would permit the VILLAGE OF FREEPORT to understand and report raw sewage leaks and infiltration and intrusion into the VILLAGE OF FREEPORT sewer collection system as required by the CWA and state, local and VILLAGE OF FREEPORT ordinances, rules, regulation and laws;

c)      Contact building owners and contractors performing repair work on private sewer laterals to determine the extent of the leak, the cause, the location, the adequacy of the repair, the cost of the repair, and the repairs made in other buildings by the contractor;

d)      Close open permits for the repair of private sewer laterals to insure the preventing of the leak and continued discharge and contamination; and

e)      Educate the residents of the VILLAGE OF FREEPORT in determining and resolving sewer lateral leaks and clogs, and provide a program to insure emergency service leak repair and detection to the VILLAGE OF FREEPORT residents, including information as to the cost of the program, the emergency contact numbers, the alternative for repair, and the lack of homeowners insurance and government assistance to perform the repair;

144.    The VILLAGE OF FREEPORT failed to establish a comprehensive program to enforce routine maintenance of private sewer laterals in compliance with the CWA, in order to reduce inflow and infiltration and sewer system spills and overflows. This failure causes a violation of the Nassau County NPDES permit.

145.    The VILLAGE OF FREEPORT, by failing to regulate the maintenance of private sewer laterals, has failed to clarify for private property owners the design, operation, construction, maintenance and inspection of property operating and maintained private sewer laterals, permitting an unhealthy condition to exist in the VILLAGE OF FREEPORT, and in violation of the VILLAGE OF FREEPORT sewer ordinance.

146.    The VILLAGE OF FREEPORT was on notice of private property sewer lateral discharges and failed to establish a program for the resolution of those lateral discharges. The VILLAGE OF FREEPORT was and is aware that private insurance policies contain general exclusions for water damage; including the back up of sewers and drains and for water below the surface of the ground including water leaks and flows. These exclusions cause a lack of repair and maintenance of private sewer laterals with no program in place for the VILLAGE OF FREEPORT to assist in the repair or replacement of private sewer laterals. State laws prohibit the use of public funds for private repairs so private property

54

repairs must be provided as part of private service plans, which are commonly utilized by municipalities. The VILLAGE OF FREEPORT does not provide such a program, nor does the VILLAGE OF FREEPORT educate residents regarding funding sources for lateral repairs.

147.    The VILLAGE OF FREEPORT must be *Ordered* to comply with rules and regulations. There is a significant and immediate need for enforcement and penalties and fines against the VILLAGE OF FREEPORT since the VILLAGE OF FREEPORT has no plan for correction of the problems addressed above, continues to neglect the important issues related to the condition of the VILLAGE OF FREEPORT underground infrastructure, and refuses to comply with its permits with no operational plan nor monitoring to remedy any of the serious conditions that exist. The harsh reality is that the VILLAGE OF FREEPORT continues to discharge sewage into the Great South Bay, and to local streams and tributaries, which has a negative impact on water quality and the environment, causing harmful algal blooms, dangerous toxins and harm the economy in the VILLAGE OF FREEPORT. See, *A Partially Treated Problem: Overflows From Combined Sewers*, Office of the New York State Comptroller, May, 2018

148.    Unless required to establish the programs identified herein, by an order of the Court, VILLAGE OF FREEPORT will continue to violate §§ 301(a) and 402 of the CWA, 33 U.S.C. § 1311(a) and 1342.  Accordingly, Plaintiff seeks the imposition of fines as against VILLAGE OF FREEPORT and an Order directing VILLAGE OF FREEPORT to comply with its requirements under the CWA. Plaintiff seeks an order requiring the VILLAGE OF FREEPORT to establish a public education program and a

program to provide inspections and repairs to private sewer laterals with reports to the VILLAGE OF FREEPORT.

149.     The VILLAGE OF FREEPORT must establish a current mapping program for all private property sewer laterals. This need was established by the EPA in *Handbook: Sewer System Infrastructure Analysis and Rehabilitation, 1991,* which recommended that all sewer lines be shown on authenticated maps, particularly in areas with high groundwater, flooding, and older sewer lines.  The VILLAGE OF FREEPORT is perfectly suited for the entire required mapping in that study. The VILLAGE OF FREEPORT must establish a program to utilize water reuse so that wastewater can be utilized to reduce overuse of Long Island's sole source for drinking water aquifer, reduce excess flows to the VILLAGE OF FREEPORT sewer collection system, and prevent the unnecessary treatment of water that can be used beneficially rather than harmfully.

150.     Unless required to establish the programs identified herein, by an order of the Court, the VILLAGE OF FREEPORT will continue to violate §§ 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342.  Accordingly, JASON MOORE seeks the imposition of fines as against the VILLAGE OF FREEPORT and an Order directing the VILLAGE OF FREEPORT to comply with its requirements under the CWA. Plaintiff also seeks an order requiring the VILLAGE OF FREEPORT to establish a public education program and a program to provide inspections and repairs to private sewer laterals with reports to the VILLAGE OF FREEPORT. THE VILLAGE OF FREEPORT must be required to establish a program for up-to-date system mapping to include private property sewer laterals, an inventory of the private side collection system assets, including age and condition, a sewage reuse plan, and up to date information related to

sewer lateral structural and nonstructural defects, including type of defect, severity,

location, and date of discovery pursuant to EPA and GASB standards.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF APPLICABLE LAWS, RULES AND ORDINANCES
### REQUIRING THE VILLAGE OF FREEPORT TO ENFORCE THE ENTIRE
### SEWER COLLECTION SYSTEM

151.    Plaintiff repeats and reiterates all of the allegations contained in paragraphs "1" to

"150".

152.    The Village of FREEPORT has approximately 17,167 housing units that have

outdated and aging sewer laterals connected to those homes. The average age of a house

in FREEPORT is eighty years old, built prior to 1930. Homes in the Village of

FREEPORT average over 50 years, and their connections to the Village of FREEPORT

sewer collection system are also aging. EPA and other government reports confirm that

the lifespan of a cast iron sewer pipe is between 20 and 50 years. Thus, homes in the

Village of FREEPORT have sewer laterals that are well beyond their lifespan

153.    The Village of FREEPORT sewer collection system is defined by the New York

Department of Environmental Conservation as a Publicly Operated Sewer System.

Publicly Owned Sewer Systems and Publicly Owned Treatment Works are required to

properly operate and maintain their wastewater collection systems. Properly operated

collection systems reduce the discharge of pollutants to treatment plants, the environment

and water bodies and are critical to the health and safety of New Yorkers. *DEC Website* A

satellite collection system such as that in FREEPORT has a duty to enforce its own sewer

use laws and other applicable laws and regulations. As the EPA has stated:

> The lack of proper maintenance has resulted in deteriorated sewers

with subsequent basement backups, overflows, cave-ins, hydraulic overloads at treatment plants, and other safety, health, and environmental problems.

154. FREEPORT has its own sewer use ordinance that applies to private property laterals:

> § 176-10. That Ordinance provides, in pertinent part, that:
> b. All building lateral and building sewer connections must be maintained in good working condition at the expense of the property owner. All necessary repairs shall be promptly made at the expense of the property owner.

155. FREEPORT has a duty to enforce its own ordinance as well as other applicable laws, rules and regulations but FREEPORT has violated that duty.

156. FREEPORT must comply with EPA Regulations:

> Assist municipal collection system communities to reduce infiltration from private property to comply with EPA satellite community enforcement as a POTW. *EPA, Permitting Approach for Publicly Owned Treatment Works that include Municipal Satellite Sewage Collection Systems*

157. FREEPORT must comply with DEC Regulations:

> DEC Regulation 750-2.9 … removing excessive infiltration/inflow to an extent that is economically feasible to comply with the County's NPDES and SPDES discharge permits.

158. FREEPORT must comply with New York State Building Code 1222.1:

> Commissioner/Superintendent of Public Works is required to insure that sewer laterals are in good working condition…the erection, installation, alteration, repair, relocation, replacement, addition to, use or maintenance of plumbing systems…and sanitary collection systems, shall comply with the requirements of the International Plumbing Code.

159. FREEPORT must comply with the International Plumbing Code:

a. § 102: Plumbing systems to be maintained in proper and sanitary condition

b. § 104: Code Official responsible to enforce the Code

c. § 702: Orangeburg Pipe is not permitted

d. § 701: Sewage may not be discharged into the ground

160. FREEPORT must comply with the Nassau County Sewer Ordinance:

a. § 1. This Ordinance shall apply to the County of Nassau and to persons who are by contract or agreement with the County Users of the County POTW.

b. § 4.3.1. No user shall contribute excess flow to the County system

c. § 14.4.  The maintenance, repair and operation of a building sewer to the point of connection to the public sewer shall be the owner's responsibility and shall conform to the rules and regulations of the County now in force or hereinafter adopted.

161. FREEPORT must comply with the Nassau County Public Health Ordinance:

§ 8. Every owner, agent, lessee or tenant, who shall be responsible for the plumbing or sanitary facilities of a building or dwelling shall, each to the extent of his responsibility, maintain each and every plumbing fixture, pipe, drain, sewer and sewer connection of such building or dwelling in a sanitary condition and shall remove stoppages, repair leaks, and replace broken, worn or faulty fixtures or pipes which shall be the cause of an unsanitary condition...

162. FREEPORT must comply with the IMA between FREEPORT and Nassau:

a. The Village shall at its own cost and expense maintain the sewage collection facilities within the Village so that said sewage collection facilities may be operated efficiently and effectively.

b. The County will provide rules and regulations for the use of all collection systems...and such rules and regulations shall govern and control the use of   the sewage collection facilities so connected and maintained by the Village under this agreement.

163.     FREEPORT has taken no steps to improve sewer mains and laterals. The Village has never enforced its sewer use ordinance for private property laterals. The Village has never examined the extent of infiltration, excess flows and exfiltration of private property laterals that overload the Nassau County treatment plants causing sanitary sewer overflows, beach closures and contamination of the Great South Bay.

164.     The VILLAGE OF FREEPORT has been on constructive notice of the poor and aging condition of the private side of the collection system for years due to available reports published by the EPA, DEC notices and other organizations that describe in detail the declining condition of cast iron private property sewer laterals. In particular, the EPA technical report dated May 1991 cautioned that government inaction regarding the corrosive effects of Hydrogen Sulfate in private property and public wastewater pipes would lead to catastrophic events such as sewer pipe collapse and street collapse. (*Hydrogen Sulfide Corrosion: Its Consequences, Detection and Control, EPA Office of Water, September, 1991*).

## PRAYER FOR RELIEF

WHEREFORE, citizen complainant Plaintiff JASON MOORE respectfully requests that this Court provide the following relief:

1.     A permanent injunction enjoining the VILLAGE OF FREEPORT from any and all ongoing and future violations of the CWA by ordering compliance with the Act;

2.     A permanent injunction directing the VILLAGE OF FREEPORT to take all steps necessary to come into permanent and consistent compliance with the prohibition on unpermitted discharges contained in § 301(a) of the CWA;

3.      A permanent injunction directing the VILLAGE OF FREEPORT to take all steps as are necessary to prevent or minimize the imminent and substantial risk to human health posed by pollutants (raw sewage) originating in its sewer collection system, in accordance with § 504(a) of the CWA, 33 U.S.C. § 1364(a);

4.      A permanent injunction directing the VILLAGE OF FREEPORT to take all steps necessary to achieve permanent and consistent compliance with the CWA and the regulations promulgated there under, and all terms and conditions of the Nassau County contract with the VILLAGE OF FREEPORT and the Nassau County SPDES and NPDES permits as well as all local, state and municipal rules, regulations, ordinances and laws, including the New York State DEC and the VILLAGE OF FREEPORT sewer use ordinance;

5.      A judgment assessing civil penalties against the VILLAGE OF FREEPORT not to exceed $27,500 per day for each violation of the CWA occurring to include in the total amount of fines to be imposed against the VILLAGE OF FREEPORT, from the notice date of May 20, 2019 to present in the amount of $51,570 per day for each violation until January 14, 2017, and $52,414 per day for each violation subsequent to January 14, 2017, pursuant to § 309 of the Clean Water Act, 33 U.S.C. 1319(d) and the Federal Civil Penalties Inflation Adjustment Act of 1990.

6.      The requirement that the VILLAGE OF FREEPORT, within 60 days of the date of judgment herein, establish a public education and outreach program that uses a variety of distribution methods to ensure that the VILLAGE OF FREEPORT'S educational messages reach all residents;

7.      The requirement that the VILLAGE OF FREEPORT, within 60 days of the date

of judgment herein, establish and submit a plan to remove and monitor illicit discharges

from private sewer laterals; to establish a funding plan for immediate and future training,

management and implementation of tasks to prevent SSO's, sewage leaks, lateral

inspections, and education; to establish a plan for mapping and sewage reuse, and to

establish a program to repair private sewer laterals to assist residents in the VILLAGE

OF FREEPORT.

8.      Assessing penalties against point source polluters, including private property

owners with leaking laterals, in the amount of $25,000.00 per day, with a stay of

enforcement for a period of 60 days while the private property owner is offered the

opportunity to have inspections and repairs of the private lateral covered under a private

sewer lateral program; however, if it is determined that the VILLAGE OF FREEPORT

has been negligent in complying with the allegations contained in this complaint, then

fining private property owners from the date of the filing of this complaint as per statute;

9.      On the Plaintiff's First Claim for Relief, an *Order* finding the VILLAGE OF

FREEPORT liable for civil penalties due to the continued violations at the VILLAGE OF

FREEPORT sewer collection system that have existed for years, and, particularly, since

the notice of this action was made; and *Ordering* a judgment assessing civil penalties

against the VILLAGE OF FREEPORT not to exceed $27,500 per day for each violation

of the CWA commencing at the earliest date that the Court finds under the applicable

statute of limitations; and to include in the total amount of fines to be imposed against the

VILLAGE OF FREEPORT, for an approximate amount no less than $12,750,000.00; and

from the notice date of September 22, 2015 to present in the amount of $51,570 per day

for each violation until January 14, 2017, and $52,414 per day for each violation subsequent to January 14, 2017, pursuant to § 309 of the Clean Water Act, 33 U.S.C. § 1319(d) and the Federal Civil Penalties Inflation Adjustment Act of 1990 and an *Order* requiring the VILLAGE OF FREEPORT to initiate a public information and education program; and to perform an assessment of its collection system, including a complete mapping of the public and private collection system, including its private property collection/lateral system, that will assist in making a determination as to the condition of the VILLAGE OF FREEPORT collection system infrastructure, the prevention of future SSO's, the prevention of future lateral leaks, and the methods to test, analyze and repair leaking laterals to prevent I & I and the resulting SSO's that are occurring on the private side of the collection system; and the report must address causes of SSO's; short-term and long-term actions required to address deficiencies; and a schedule for implementation of an action plan; and the VILLAGE OF FREEPORT comply with all of the laws addressed and itemized in this complaint, and the VILLAGE OF FREEPORT must undertake a complete assessment of the condition of the spurs and spur connections and take steps required by DEC and EPA regulations to make repairs; and the VILLAGE OF FREEPORT must establish a private sewer lateral service program to assist residents with repairs, inspections and replacements of sewer laterals;  and the VILLAGE OF FREEPORT must establish a corrosion inspection and action plan to prevent cracked, broken and collapsed pipes and laterals on private property.

10.      On the Plaintiff's Second Claim for Relief an order finding that VILLAGE OF FREEPORT is liable for civil penalties, an order finding VILLAGE OF FREEPORT liable for civil penalties and ordering a judgment assessing civil penalties against the

VILLAGE OF FREEPORT not to exceed $27,500 per day for each violation of the CWA occurring in an amount from the notice date of May 20, 2019 to present in the amount of $51,570 per day for each violation until January 14, 2017, and $52,414 per day for each violation subsequent to January 14, 2017, pursuant to § 309 of the Clean Water Act, 33 U.S.C. § 1319(d) and the Federal Civil Penalties Inflation Adjustment Act of 1990 and an order of this Court requiring the VILLAGE OF FREEPORT to report all current leaks and breaks in the VILLAGE OF FREEPORT sewer collection system, to the public and to required municipal agencies as well as compliance reports as required by the EPA; and every six months identifying, specifically, all illicit discharges from lateral connections and sanitary sewer defects, addressing the date, flow amount, cost of removal of the discharge, the date of removal of the discharge, and an explanation for late removal of discharge; and

11.     On the Plaintiff's Third Claim for Relief an order finding that VILLAGE OF FREEPORT is liable for civil penalties, an order finding VILLAGE OF FREEPORT liable for civil penalties and ordering a judgment assessing civil penalties against the VILLAGE OF FREEPORT not to exceed $27,500 per day for each violation of the CWA occurring in an amount from the notice date of May 20, 2019 to present in the amount of $51,570 per day for each violation until January 14, 2017, and $52,414 per day for each violation subsequent to January 14, 2017, pursuant to § 309 of the Clean Water Act, 33 U.S.C. § 1319(d) and the Federal Civil Penalties Inflation Adjustment Act of 1990 and an order of this Court requiring the VILLAGE OF FREEPORT to enforce all laws, rules, regulations and ordinances addressing the maintenance of the entire sewer collection system in the VILLAGE OF FREEPORT, including sewer laterals on private property

that make up Fifty Percent of the entire sewer collection system, and the spur connection from the curb to the public sewers in the street; and

12.     An *Order* directing the VILLAGE OF FREEPORT to comply with 6 NYCRR § 750-2.9 to take steps to reduce infiltration; and

13.     An order granting to the Plaintiff legal fees per statute, costs and disbursements incurred in this action; and

14.     Such other and further relief, as this Court deems appropriate.

Dated:  Mount Sinai, New York
            November 19, 2019

Raymond Negron, Esq.
Attorney for Plaintiff
234 North Country Road
Mount Sinai, New York 11766
(631) 928-3244
(631) 991-2005 (f)
ffnegron@hotmail.com

To:

County of Nassau
c/o Nassau County Clerk

## **CERTIFICATION**

State of New York )
)ss:
County of Suffolk )


Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best
of my knowledge, information, and belief that this complaint: (1) is not being
presented for an improper purpose, such as to harass, cause unnecessary delay, or
needlessly increase the cost of litigation; (2) is supported by existing law or by a
nonfrivolous argument for extending, modifying, or reversing existing law; (3) the
factual contentions have evidentiary support or, if specifically so identified, will
likely have evidentiary support after a reasonable opportunity for further
investigation or discovery; and (4) the complaint otherwise complies with the
requirements of Rule 11.

The grounds of my belief as to all matters not stated upon my own knowledge are
as follows: discussions, letters, and records of the Plaintiff and Defendants.


Jason Moore


Sworn and Subscribed before me
this 20th day of November, 2019


Notary Public

RAYMOND NEGRON
Notary Public, State of New York
No.02NE6072185
Qualified in Suffolk County
Commission Expires April 1, 20 22